WISCONSIN BRIDGE & IRON COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*May 4—June 5, 1956.*

For the appellants there was a brief and oral argument by *Fred R. Wright* and *Francis J. Demet,* both of Milwaukee.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

MARTIN, J.    On the afternoon of September 29, 1952, Thomas Harmer was killed while engaged on the erection of steelwork for a new building addition. He was kneeling on an I beam, placing a steel-cable choker around the beam so that it could be dragged to the building by means of a crane. The death was caused by electrocution. The crane was a mobile unit equipped with a 40-foot boom with a 12-foot extension jib capable of being extended vertically 59 feet from the ground. It was situated directly beneath three electric wires carrying 26,400 volts each, located 45 feet above the ground.

Wilbur M. Gehrt, foreman for the company, testified that he placed the crane in position so that between the jib and boom and the wires there was approximately 10 to 15 feet clearance, both vertically and horizontally. The record shows that the work was being done with the boom extended at an approximate 40-degree angle. Regarding the clearance, Gehrt testified in response to inquiry by the examiner:

"The Examiner: Ten or 15-feet clearance between the boom and this wire, the clearance in question being partially vertical and partially horizontal? *A.* Yes, sir.

"*Q.* So that if the jib and boom were moved, it would not touch the wire at any point? *A.* No, sir."

The work being done was described by Elmer A. Duesing, one of the decedent's fellow employees, thus:

". . . we had to take these lintels, pick them up and drift them to the building, or drag them to the building, . . ."

Immediately prior to the accident Duesing signaled to Clark Trinkle, the operator of the crane, to let down the cable. The cable was dropped and Duesing carried it over and put it down on the iron; he then proceeded to help the deceased and another employee pry two lintels from the rest of the iron in order to attach them to the cable.

Duesing stated that so far as he knew, from the time he took hold of the cable to attach it to the beam, the crane did not move. Gehrt, who could not see the men from his position behind the crane but could see the boom, stated that the crane had not moved.

Order No. 3537–1 of the General Orders on Safety in Construction, provides:

"*Protection from Adjoining Power and Light Lines.* No part of a structure in progress of erection, including accessory scaffolds, towers, power equipment, booms, and other fixed and movable equipment constructed or used in connection with a construction project, shall extend nearer to conductors carrying electrical current than the distance indicated in the following table: [Table not printed.]"

It was established that the required clearance under the circumstances existing in this case was 11.89 feet.

Appellants concede the employee was electrocuted but contend that there is nothing in the evidence to show that the crane came in contact with the wires. There is evidence, however, that the wires above the crane were the only source of electricity in the vicinity. Gehrt stated that they were the only wires there. Further, the investigation report of Wilton Wildish of the Industrial Commission states that "one of the electric wires nearest to the boom was pitted to the extent that it was necessary that it be spliced." In the memorandum of J. E. Wise, electrical engineer of the Industrial Commission, it is stated:

"The maximum distance the current could jump would be 1.5 inches. It seems, therefore, that in some way or other the boom must have been moved enough to reduce the distance between the boom and the conductor to approximately 1.5 inches."

That the boom contacted the wire is a proper inference to be drawn from the evidence. The question then is whether such inference compels the conclusion that the employer violated Order No. 3537–1.

If the contact between boom and conductor could occur *only* through violation of the order by the employer, that question would properly be answered in the affirmative. However, the circumstances of this case clearly present the probability that the accident occurred through the negligence of the crane operator. A full extension of the boom vertically would reach above the overhead wires. It could be so extended only by the manipulation of the operator. It is well established that an employer may not be subjected to a penalty where the injury is the result of negligent or inadvertent acts of its employees. *Saxe Operating Corp. v. Industrial Comm.* (1929), 197 Wis. 552, 222 N. W. 781.

On the record here, it was speculation for the commission to attribute the accident to the employer rather than the crane operator, simply by concluding from the fact of the accident that the order had been violated. It was not proper to reach that conclusion by mere reasoning. It must be based on evidence. The placing of the crane, which the foreman was responsible for, was not such as required the boom to be extended into the proscribed area. At the 40-degree angle, the position of the boom and jib afforded adequate clearance. The crane had been operated in that position throughout the morning, doing the same work, and there is no evidence that the boom had ever extended nearer to the conductors than the order permitted. There is no evidence that the operator was directed by the foreman to raise the boom into the proscribed limits of clearance. When the boom did come into contact with the wire, therefore, it was a momentary departure from the established method of operation fixed by the employer—a circumstance as compatible with the operator's negligence as the employer's failure to comply with the safety order.

Respondents cite *L. G. Arnold, Inc., v. Industrial Comm.* (1954), 267 Wis. 521, 524, 66 N. W. (2d) 176, where this court, in considering the same order, said:

"If the crane had been located at the place of the accident and made accessory equipment to a structure in progress of construction, the order would be applicable and in such a case it would also be capable of grounding, as required under the second section of the order. If, in the course of such use, the crane would come within the proscribed distance from the wires, then any order regarding a safety device, safeguard, or other means or methods needed for making the operation safe, would come into play."

In that case, where it was held that the accident happened as the result of the crane operator's negligence, the crane was being used to transport steel beams along a public road. In the instant case the crane was "located at the place of the accident and made accessory equipment to the structure in

progress of construction," and the order was certainly applicable. But it cannot be said to be violated unless there is evidence tending to show that location of the crane, in the light of the work to be done, required extension of the boom into the prohibited area.

Respondents also cite the rule of *Umnus v. Wisconsin Public Service Corp.* (1952), 260 Wis. 433, 51 N. W. (2d) 42, and other cases holding that the causal connection between injury and violation of a safety order may be presumed where the injury is such as the order is intended to prevent. The presumption does not attach, however, until violation of the order is shown by evidence. The presumption that the commission indulged in this case was not that a proved violation of the order is the cause of a death which the order seeks to prevent, but that a contact of boom with conductor constituted proof of a violation. The reasoning is fallacious, and the commission's findings and order based thereon must be reversed.

In view of our decision as set out above, it is unnecessary to discuss other questions raised in the briefs and arguments of counsel.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment setting aside the commission's order for increased compensation.