299 P.2d 84

Genoveva **MONTOYA**, as next friend of Maria Olivia Portillo, dependent of Jose Salvador Portillo, Deceased, Claimant-Appellant,

v.

**KENNECOTT COPPER CORPORATION,** Chino Mines Division, Santa Rita, New Mexico, Employer-Appellee.

No. 6035.

Supreme Court of New Mexico.

June 25, 1956.

Hannett & Hannett, Albuquerque, Edison C. Serna, Silver City, for appellant.

Ben Shantz, Silver City, H. Vearle Payne, Lordsburg, I. M. Smalley, Deming, for appellee.

SADLER, Justice.

The plaintiff below, the appellant in this Court, suing as next friend for Maria Olivia Portillo, the minor child and dependent of Jose Salvador Portillo, her father, sought recovery of the extra compensation of 50 per cent. provided by 1953 Comp. § 59–10–7, for the alleged violation of its terms in the failure to provide a safety device required by law. Such failure it is said was responsible for an explosion resulting in the death of the minor's father while in the course of his employment by the defendant employer. The trial court having sustained a motion to dismiss the amended complaint as failing to allege facts upon which relief could be granted as to the claim for the extra compensation, this appeal followed.

The decedent was employed by the defendant as foreman of a blasting crew. While so employed, he suffered an injury on March 31, 1954, from an explosion arising out of and in the course of his employment, resulting in his death. His average weekly earnings were $125. Basis for the claim of the fifty per cent. extra compensation for failure to provide a safety device required by law rests on the fact that the defendant (appellee) stored detonators and fuses together with explosives, in and on a certain truck, contrary to and in violation of 1953 Comp. § 63–25–13, which violation was responsible for the decedent's death.

The facts hereinabove recited were alleged in plaintiff's amended complaint. Leave was subsequently granted the plaintiff to add by interlineation as a part of the amended complaint certain specific allegations intended to support her claim for the added fifty per cent. compensation by setting out the respects in which it was claimed there was a failure to provide a safety device required by law. The defendant already had answered, prior to the filing of the amended complaint, admitting decedent's death had resulted from an injury arising out of and in the course of his employment and alleging further, that it was paying him base compensation, as provided by law, but denying liability for the 50% extra compensation. It was agreed that this answer should stand as an answer to the amended complaint as further amended by interlineation.

Subsequent to the interlined addition to the amended complaint mentioned above, the defendant moved to dismiss the same upon the ground that it failed to state a

claim upon which relief could be granted, (a) in failing to show the decedent's death resulted from defendant's failure to provide a safety device required by law; and, (b) in failing to identify the specific safety device which it is claimed the employer had failed to provide.

Following argument, the trial court entered an order sustaining the motion to dismiss the amended complaint, as amended by interlineation, with the further proviso that the dismissal should be without leave to amend further. It is from such order that the present appeal is prosecuted.

The basic question for our determination is presented under one point, divided into four sub-headings for purposes of argument. They are thus stated by counsel for the plaintiff, to-wit:

## Point I

That Claimant's First Amended Complaint, As Amended By Interlineation, States A Claim Upon Which Relief Can Be Granted.

A. That the separate storage of detonators and other explosives is a safety device required by law.

B. That the separate storage of fuses and other explosives is a safety device required by law.

C. That magazines for the separate storage of detonators and explosives are a safety device or devices required by law.

D. That a "reasonably safe" place of employment is a "safety device" required by law.

The statutory provisions, the violation of which it is charged caused the death of decedent are 1953 Comp. §§ 63–20–1, 63–25–3, and 63–25–13. They will be set out herein in the order just listed.

"Every mine employer shall furnish such employment and such place of employment as shall be reasonably safe for the employees therein, and shall furnish and use safety devices and safeguards, adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees." § 63–20–1, 1953 Comp.

"Detonators or blasting caps shall not be stored with other explosives but in separate magazines." § 63–25–3, 1953 Comp.

"Detonators and fuse shall not be stored with explosives." § 63–25–13, 1953 Comp.

The so-called "safety statute," 1953 Comp. § 59–10–7, upon which the recovery here sought by the plaintiff must stand or fall, as it existed at the time of decedent's injury and death, reads as follows:

"In case an injury to, or death of a workman results from his failure to

observe statutory regulations appertaining to the safe conduct of his employment, or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under the Workmen's Compensation Act shall be reduced by fifty (50) per centum. In case an injury to, or death of a workman results from the failure of an employer to provide safety devices required by law, or prescribed by the labor industrial commission of New Mexico as hereafter provided, then the compensation otherwise payable under the Workmen's Compensation Act shall be increased by fifty (50%) per centum. Provided, further, that any additional liability resulting from any such negligence on the part of the employer shall be recoverable from the employer only and not from the insurer, guarantor or surety of said employer under the Workmen's Compensation Act, except that this shall not be construed to prohibit an employer from insuring against such additional liability.

"And Provided further, that no employee of such employer shall file a claim for such additional fifty (50%) per centum compensation under the Workmen's Compensation Act on the basis of an injury, nor shall a dependent of a deceased employee file a claim on the basis of the death of a workman, suffered because of the lack of a safety device, unless said claim shall identify the specific safety device which it is claimed was not furnished by the employer; and the employer shall be under a like duty to specifically allege the specific safety device which it is claimed an employee failed to use before the employer may claim a reduction of fifty (50%) per centum as herein provided."

A reading of the sub-headings into which counsel for plaintiff have divided their Point I for purposes of argument readily suggests that all may be encompassed into a single discussion taking notice, nevertheless, of the several sub-points presented. "To come to grips" with the problem before us, as counsel for defendant, the employer, prefer to introduce their argument, the record presents a widely variant appraisal of the true meaning of the governing statute. That statute is 1953 Comp. § 59-10-7. The fundamental difference in the views of opposing counsel as to the true meaning of this statute may best be stated by saying that counsel for defendant would confine the "safety device" intended by it to something tangible—a thing which can be seen, felt and "provided."

On the other hand, the plaintiff's counsel would broaden the meaning of the phrase to include a "rule of conduct," as the doing of an "act," calculated to promote safety, or prevent accidents. A reading of the

briefs of opposing counsel demonstrates, we think, that the thinking of counsel proceeds in directly opposite directions on this decisive question.

Thus it is that we have the plaintiff's counsel presenting as its initial contention for a ruling by us that (a) the separate storage of detonators and other explosives is a safety device required by law, and (b) that the separate storage of fuses and other explosives is likewise a safety device required by law. They quote 1953 Comp. §§ 63–25–3, 63–25–13 and 63–20–1. They are cited, supra, and quoted as well. In as much as the plaintiff's complaint as finally amended charged a violation by defendant of all three sections mentioned, or attempted to do so, we may assume a violation of them for purposes of testing whether such violation invokes an award of the 50% extra compensation.

■ The pertinent section of plaintiff's complaint, as finally amended, reads as follows:

"That at the time of the decedent's death the employer furnished to the decedent and other employees one truck, which was used as a magazine for the storage of detonators, fuses and explosives, the same being all stored together and contrary to the provisions of Sections 63–25–3, 63–25–13 and 63–20–1, New Mexico Statutes, 1953 Compilation; and that the employer failed to provide decedent with a separate magazine for the storage of detonators and fuses separate and apart from a magazine for the storage of explosives, which violation of statutory duty and failure to provide said safety devices resulted in the explosion causing decedent's death."

It is strongly urged by counsel for plaintiff that the cases of Neeley v. Union Potash & Chemical Co., 47 N.M. 100, 137 P.2d 312, and Jones v. International Minerals & Chemical Corporation, 53 N.M. 127, 202 P.2d 1080, support their claim that an "act," or course of conduct, constitutes a safety device within the meaning of the statute in question. We do not so view the holding in either case. We shall discuss the last mentioned case first. The instruction quoted by plaintiff in her brief from our opinion in Jones v. International Minerals & Chemical Corp., supra, rather than lending support to plaintiff's position on the question discussed, supports correctness of the appraisal given the statute by defense counsel. Plaintiff's counsel claim the instruction, which we shall quote presently, is given approval by us in our opinion in the Jones case. If so, it in no manner aids the plaintiff. The instruction mentioned reads:

"10. You are instructed that the term 'safety device' as used in the Workmen's Compensation Act of this State means and includes all things which will lessen danger or secure

safety. It may mean a device attached to or a part of or connected with a machine or industrial unit or one not necessarily physically attached to or a part of the machine or industrial unit causing injury. The term is intended to include and does include any instrumentality provided by an employer for use by an employee in the operation or repair of a machine or the performance of his duty which in the operation or repair of a machine or in performance of his duty reduced danger or hazard to the employee."

It is readily observed from a reading of this instruction that it interprets the "things" mentioned which "will lessen danger or secure safety," as something tangible, concrete, that can be seen, touched or felt—an "instrumentality"—as opposed to a rule or course of conduct. The instruction uses the word "things," "device attached to," "instrumentality provided," all suggestive of concrete, tangible gadgets—or let us say "devices." We see nothing in plaintiff's sub-points A and B to merit a holding that a safety device is anything other than what the phrase implies—a visible article designed to promote safety and avoid accidents.

In Neeley v. Union Potash & Chemical Co., supra [47 N.M. 100, 137 P.2d 317], we dealt with a factual situation which involved two methods for effecting "grounding" of machinery against electrical current—(a) one by using a grounded cable consisting of four wires, one of which was a ground wire; and (b) the other the attaching of a ground wire to the frame of the machine and running it into the ground. The employment of either method constituted a providing by employer of something tangible, a "thing," or device, capable of being identified, to be employed by the workman for his own safety. This falls far short of establishing that an "act," or "course of conduct," is a safety device.

A careful reading of our opinion in the Neeley case leaves one fairly impressed that the language: "We hold that the statute requires the grounding of the machinery in question, as a 'safety devices required by law' * * *," comprehends the physical use or employment of the ground *wire*, not the scientific result which the act or practice placing it in the earth—"grounding"—entails. Significantly, such a meaning is emphasized by the constant use of the term "grounding device," as found throughout the opinion.

So considered, we see no inconsistency between our present holding and our decision in the Neeley case. To whatever extent that case may be viewed as holding a "rule of conduct," or "specific safety practice," enjoined by law (dissociated from the use of a tangible safety device likewise required by law) will support imposition against an employer of the penalty award, we decline to follow it as a precedent.

Significantly, there is not a case in New Mexico, including the Neeley case, that does not tie the safety device mentioned to something "tangible"—in the Neeley case a "wire" for grounding; in Pino v. Ozark Mining and Smelting Co., 35 N.M. 87, 290 P. 409, it was "goggles" to protect the workmen's eyes from flying particles; in Thwaits v. Kennecott Copper Corporation, 52 N.M. 107, 192 P.2d 553, it was a hand rail on a platform to protect the workman from falling; and, in Apodaca v. Allison & Haney, 57 N.M. 315, 317, 258 P.2d 711, it was a gas indicator to give notice of the presence of deadly gases,—to cite some typical cases.

In their third sub-point counsel for plaintiff carry the argument a step further by advancing the claim that the magazine mentioned in 1953 Comp. § 63–25–3, is a safety device within the statute in question. Recognizing, however, that the explosives responsible for decedent's death were not at the time in any building or structure meeting the popular conception of a "magazine," the contention is made that by placing the detonators and blasting caps in a truck where explosives also were at the time carried, the truck itself was being employed as a "magazine" for transport of the explosives and separate trucks, treated as "magazines," not being provided, a violation of § 63–25–3 ensued, thereby invoking the so called safety statute for plaintiff's benefit.

It requires some refinement of reasoning to contemplate a "truck" as a "magazine," and equally as much to visualize an ordinary building or structure as the "magazine" mentioned in the statutes quoted and thus a safety device within the meaning of the safety statute. Here, as in the sections of the statute mentioned in plaintiff's sub-points A and B, it being the "storing" that is proscribed by § 63–25–3, we find a certain course of conduct condemned by the statute. It is the doing of a certain act that is outlawed, not the providing of a named safety device.

We might very well agree that where an omission to employ the "safety device" enjoined by 1953 Comp. § 63–25–1 (not here one of the sections whose violation is specifically charged against defendant), results in injury or death to the employee, benefit of the safety statute may be claimed by him. While, generally, the complaint, or claim, charges a violation of §§ 63–25–3, 63–25–13 and 63–20–1, when it begins to particularize it is only a violation of § 63–25–13 prohibiting the "storage of detonators and fuses with explosives" and the failure to provide a separate magazine for storage of said detonators and fuses "separate and apart from a magazine for storage of explosives," that is specifically charged in the complaint.

We invite a reading of 1953 Comp. Article 25 of chapter 63, on "mines and mining."

Article 25 deals with "Explosives for mines other than coal". We defy anyone to read this Article 25 *from beginning to end* and find any justification whatever for converting by judicial construction the "magazine" of which the legislature is speaking in this chapter into a "truck" on the way to work with a group of employees and their equipment. Note the language of 1953 Comp. § 63–25–1, reading:

"*Storage of explosives—Magazines.*—Explosives shall be stored on the surface only, except as hereinafter provided, in magazines located at safe distances away from all mine openings, mine buildings, or inhabited dwellings, these distances to correspond so far as possible with recommendations as set forth by explosive manufacturers."

Other sections, each with appropriate headings follow, such as "Construction of magazines—Lights", § 63–25–2; "Detonators," § 63–25–3; "Location of magazines—Safety requirements", § 63–25–4; "Magazine to be locked—Smoking and inflammable material prohibited", § 63–25–5; "Auxiliary magazines—Location—Amount of explosives stored", § 63–25–7, and so on and on. Of course, there are to be found in the chapter numerous statutory regulations to be observed by the employee whose violation will, if causing injury or death to him, decrease his compensation by 50 per cent. simply *because the safety statute so provides.* Likewise, there are to be found in the chapter numerous statutory regulations, shall we call them *"specific safety practices,"* enjoining upon the employer the doing or refraining from doing of certain *acts* looking to the safety of the employee, but delinquency of the employer with respect to these *acts* of omission or commission do not subject the employer to imposition of the penalty award simply because the *safety statute does not so provide.*

Finally, plaintiff's counsel seize upon the language of 1953 Comp. § 63–20–1 enjoining upon the employer the duty to provide a place to work that is "reasonably safe," as providing for a "safety device" required by law. The statute mentioned reads:

"Every mine employer shall furnish such employment and such place of employment as shall be reasonably safe for the employees therein, and shall furnish and use safety devices and safeguards, adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees." 1953 Comp. § 63–20–1.

The claim that the requirement of a "safe place to work" is a "safety device" within the meaning of safety statute is confronted by all the defects of intangibility encountered in a consideration of the claims already discussed and disposed of. Counsel

for defendant place some reliance on a withdrawn opinion in the case of Thwaits v. Kennecott Copper Corporation, 52 N.M. 107, 192 P.2d 553, in which the majority opinion first filed did hold, as counsel state, that failure to provide a "safe place to work," represented a legislative effort to provide a safety device within the intendment of the safety statute. The writer along with Mr. Justice McGhee registered a vigorous dissent to that conclusion and, upon rehearing, the opinion so holding was withdrawn and abandoned when it was pointed out to us by amicus curiae that there was a specific statute requiring a railing to be placed around the platform in question as a safety device. As counsel state, not much satisfaction is to be had by either party from the Thwaits case but, if either party is to profit by it, the defendant may claim the greater comfort, it now seems to us, since a holding that would easily have supported the conclusion reached, if sound, was expressly abandoned in favor of a more certain and solid foundation.

■ If further proof were needed to establish the correctness of defendant's position on the question before us, namely, that the safety device contemplated by the statute in question is something tangible and concrete, which can be seen, touched and described, it is to be found in the closing paragraph of the statute, to-wit:

"And Provided further, that no employee of such employer shall file a claim for such additional fifty (50%) per centum compensation under the Workmen's Compensation Act on the basis of an injury, nor shall a dependent of a deceased employee file a claim on the basis of the death of a workman, suffered because of the lack of a safety device, *unless said claim shall identify the specific safety device which it is claimed was not furnished by the employer; and the employer shall be under a like duty to specifically allege the specific safety device which it is claimed an employee failed to use before the employer may claim a reduction of fifty (50%) per centum as herein provided.*" (Emphasis ours.) 1953 Comp. § 59–10–7.

■ The legislature was talking about *tangible things* that could be seen and described, when it enacted the italicized language as a condition to stating a cause of action for recovery of the extra compensation, or for reducing as against a claimant the amount of the base compensation. How, may we ask, can the pleader describe the failure to furnish a safety device claimed to consist of conduct amounting to negligence, in purported compliance with this statute? And, by the same token, how is the employer, seeking a reduction in base compensation, to describe the "safety device" which it is said the claimant (workman) failed to use, if only his act of omission was one amounting to negligence?

This language in the closing paragraph of the governing statute, quoted above, seems ·to us absolutely conclusive of the correctness of the interpretation counsel for defendant have given the statute which the trial court adopted and we approve.

It follows from what has been said that the judgment of the trial court is correct and should be affirmed.

It will be so ordered.

COMPTON, C. J., and C. ROY ANDERSON, District Judge, concur.

LUJAN and McGHEE, JJ., dissenting.