344 P.2d 475

**Elbert HICKS, Claimant, Plaintiff-Appellee,**

v.

**ARTESIA ALFALFA GROWERS' ASSOCIATION, a corporation, Employer, and American Employers' Insurance Company, Insurer, Defendants-Appellants.**

No. 6597.

Supreme Court of New Mexico.

Sept. 24, 1959.

Reese, McCormick, Lusk & Paine, Carls-bad, for appellants.

Leonard T. May, Carlsbad, for appellee.

CARMODY, Justice.

Defendants appeal a workmen's compensation case from the allowance of a 50 per cent penalty for the failure to supply a safety device.

The questions for our determination are (1) whether wires used to hold a cargo rigid for shipping purposes are a safety device for unloading operations and (2) if they are, whether their premature removal at the time of unloading is a failure to supply the same by the employer.

On August 27, 1957, in Artesia, the plaintiff was one of several employees of the defendant association engaged in unloading a prefabricated steel warehouse building from a railroad gondola car. Practically all the parts of the building had been removed except the wall sections, 18 in number, which were 10 feet wide and 12 feet high. In order that these sections could be held in place during shipment, braces were attached to the side of the car and also heavy gauge wires were looped around and through each of the sections and in turn attached to the side of the car. The wires were so installed that they could be cut to allow the removal of one section at a time and yet hold the remaining sections firmly in place. An

employee was assigned the job of cutting the wires to allow removal of the sections, but when it developed that the cutters were not heavy enough or sharp enough to do so, the foreman ordered another employee to sever the wires with an acetylene torch. It was suggested by some of the employees that the wires be cut separately as to each section, but the foreman directed that they all be cut at once, and after doing so he assigned other workmen to hold the sections upright during the removal process.

The plaintiff was on top of the steel sections and it was his duty to insert an eye-bolt in each section about to be removed so that with a winch line it could be moved out of the car and placed in another locality. The first section was removed without any undue difficulty. However, as the second section was being lifted out, the remaining sections began to fall and the men assigned to hold them were unable to prevent them from doing so. The plaintiff attempted to protect himself by grasping the A-frame of the winch truck, but one or more of the sections hit a cable chain supporting the frame, snapping the hook, and as a result the plaintiff was catapulted over the frame to the ground, sustaining serious injuries.

The defendants commenced paying total compensation to the plaintiff, including all hospital and medical bills, but this action was predicated upon the defendants' refusal to pay the 50 per cent increase as provided by statute for the failure to supply a safety device in general use in the industry.

The case was tried to a jury, and at the close of the plaintiff's case defendants moved for a directed verdict on the ground that the wires were not a safety device in general use for the use or protection of the workman, but rather were a device to hold the cargo rigid during shipment, and, second, if the wires were a safety device, that they were furnished by the employer and that their premature removal by the crew under the direction of the foreman was an error in judgment, or negligence, but not a negligent failure to supply a safety device. This motion, subsequently renewed, was denied by the trial court and the case went to the jury, which returned its verdict that the wires were safety devices in general use and that the plaintiff's injury was proximately caused by the employer's failure to supply such safety devices.

The statute involved is § 59–10–7, N.M. S.A.1953, as amended by Chapter 29 of the session laws of 1955, and, insofar as the same is relevant, it is as follows:

"In case an injury to, or death of a workman results from the failure of an employer to provide safety devices required by law, or in any industry in which safety devices are not prescrib-

ed by statute, if an injury to, or death of, a workman results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman, then the compensation otherwise payable under the Workmen's Compensation Act shall be increased by fifty (50%) per centum."

 Under this statute, it is the duty of the employer to supply reasonable safety devices in general use in the industry of the employer. It follows that if the employer is engaged in more than one industry, he is charged with supplying the safety devices in general use in each of such industries. Briggs v. Zia Co., 1957, 63 N.M. 148, 315 P. 2d 217. In this case, although the employer was generally in another type of business, the particular activity at the time of the accident was that of unloading a prefabricated steel building from a railroad car. Therefore, it had the duty of supplying reasonable safety devices for the work involved.

 That the wires were devices in general use in the industry of the shipper was established without question, even though the record is silent as to who actually furnished or installed the wires. About all we know from the record is that when the car in question was first observed, it was on a siding at the employer's place of business and that the wires were then in place. There is no actual evidence that in the industry of unloading prefabricated steel buildings from a railroad car that there was a duty on the part of the employer to supply such wires, although there was testimony by at least one witness that the purpose of the wires was *for safety* in setting the sections into the railroad car as well as in taking them out. However, not all things which promote safety can be considered as safety devices, and even those things which might be safety devices for one purpose may not be so for another purpose. Were it otherwise, practically every workmen's compensation case would come within the provisions of the increased penalty statute. It is common knowledge that there are many articles of equipment or material which are braced for shipment or loaded in containers in such a way as to be made safe, and that braces must be removed or containers opened before the unloading can commence. Such would not ordinarily be considered as having any relationship to safety devices to be used for unloading.

 In any event, before such safety measures can be considered as safety devices of the unloading industry, there must be some proof that the same are in general use in that industry. Such proof is not present here. The fact that another person in a similar occupation severed the wires differently does not thereby amount to proof that the wires were safety devices *in gen-*

*eral use* under the statute. Compare *Jones v. International Minerals & Chemical Corporation*, 1949, 53 N.M. 127, 202 P.2d 1080; *United States v. Stanolind Crude Oil Purchasing Co.*, 10 Cir., 1940, 113 F.2d 194; and *Codd v. Westchester Fire Insurance Co.*, 1942, 14 Wash.2d 600, 128 P.2d 968, 151 A.L.R. 316. The statute must be liberally construed in favor of the workman, but this does not mean enlarging on the apparent legislative intent or giving words meaning beyond their ordinary scope.

We held in *Montoya v. Kennecott Copper Corporation*, 1956, 61 N.M. 268, 299 P.2d 84, that a safety device is not a course of conduct, and there is serious doubt if plaintiff's proof amounted to more than a showing of a negligent practice or course of conduct. However, whether the rule has any application here we need not determine, inasmuch as the plaintiff did not show that his injury resulted from the negligence of the employer in failing to supply reasonable safety devices in general use for the protection of the workmen.

We hold that the learned trial judge committed error in failing to sustain the motion for directed verdict as a matter of law.

In view of our determination of this proposition, there is no need for us to give further consideration to the second question propounded by the defendants.

The case will be reversed with instructions to the trial court to set aside its judgment and enter judgment for the defendants with respect to the 50 per cent increased liability; and it is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and MOISE, JJ., concur.