ICKE CONSTRUCTION COMPANY, INC., Plaintiff and Respondent, v. INDUSTRIAL COMMISSION, Defendant and Appellant: THORLTON, Defendant.

*January 12—February 4, 1966.*

64

For the appellant Industrial Commission the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Stroud, Stebbins & Stroud,* and oral argument by *C. Vernon Howard, Jr.,* all of Madison.

FAIRCHILD, J. Sec. 102.57, Stats., provides:

"Where injury is caused by the failure of the employer to comply with any statute or any lawful order of the commission, compensation and death benefits as provided in this chapter shall be increased 15 per cent. Failure of an employer reasonably to enforce compliance by employes with such statute or order of the commission shall constitute failure by the employer to comply with such statute or order."

A safety order of the commission, 2 Wis. Adm. Code, sec. Ind 1.84, February, 1962, Register No. 74, provides:

"(1) Cranes, derricks, hoists, power shovels, drag lines, well and post hole drilling equipment, excavators, pile drivers and similar equipment any part of which is capable of vertical, lateral or swinging motion shall not be operated within 6 feet of electrical lines unless such lines are de-energized and grounded.

"(2) Electrical lines referred to herein are defined as operating at 750 volts or more to ground or between conductors.

"(3) The provisions of this section shall not apply to work done in the erection, maintenance or operation of electric power lines or communication facilities or lines located in proximity to electrical lines."

The fact that the crane was operated within six feet of an electric line which had not been de-energized is undisputed. The issue is whether the employer was shown to bear responsibility for the violation. The learned circuit judge correctly applied the rules developed in past decisions of this court, and concluded there was no evidence to support a finding that the employer was responsible.

The applicant widow and George Icke, president of the company, were present at the hearing. Neither was represented by counsel. The examiner appears to have thought that contact between the crane and the live wire was all that needed to be established in order to support an award of increased compensation. As a result, many of the circumstances are not adequately developed in the record.

It appears that the company was laying a gas main in a ditch along the north side of the highway, and that a high-tension line ran along the highway, east and west, above the ditch. Evidently the crane was operated along the south side of the highway, perhaps with no real danger of coming in contact with these wires. The line with which the crane made contact ran north and south, across

the road, and apparently served premises to the south. Mr. Icke's testimony suggests that although this line was highly energized, it did not resemble the line which ran east and west. It appears that the men on the crew did not see this line until the crane touched it.

Mr. Icke testified that he had repeatedly warned his men to keep the boom at least 10 feet from any possible contact with a wire. On a previous occasion he had severely reprimanded Hosig, the crane operator, for swinging the boom 15 feet above the line (apparently the one which ran east and west on the north side of the road). He had seen no other violation.

The record does not disclose the height of the wire which the crane struck. It seems obvious that the crane would have to pass under it, but the record does not disclose how Mr. Icke expected or directed the crane to be operated when it did so. It does not appear whether there were wires crossing the highway at other points. He did testify, generally, that "there never was a reason for having to operate closer than ten feet from any electric wire. Had there ever been an occasion to operate closer than six feet to a wire, I would not have used a crane." There is no other evidence bearing upon the probability of contact between the crane and any line which crossed the highway.

This court has held that where an employee's injury was caused by momentary lack of compliance with a safety statute or order resulting from the unanticipated negligence of a fellow employee, that fact alone does not establish "failure of the employer to comply" within the meaning of sec. 102.57, Stats.[2] Two of these decisions involved negligence of a crane operator in permitting his crane to contact electric lines.[3]

---

[2] See *Eau Claire Electric Co-op. v. Industrial Comm.* (1960), 10 Wis. (2d) 209, 214–216, 102 N. W. (2d) 274.

[3] *L. G. Arnold, Inc., v. Industrial Comm.* (1954), 267 Wis. 521, 66 N. W. (2d) 176; *Wisconsin Bridge & Iron Co. v. Industrial Comm.* (1956), 273 Wis. 266, 269, 77 N. W. (2d) 413.

We have indicated that if a foreman or similar supervisor directed the act which was a violation of the safety order, such directions would bind the employer.[4] We have also held that the employer is responsible "for the failure of a supervisory employee to use reasonably adequate methods and processes to make safe the employment and place of employment, control over which has been delegated to him."[5] Where the employer fails reasonably to enforce compliance by his employees with safety orders or statutes, the failure by his employees is attributable to the employer under sec. 102.57, Stats.

Mr. Icke, the president of the company, appears to have been the person in control of the work which was being performed, although he was not present in the vicinity of the accident. He did make a passing reference to Hosig, the crane operator, as "being the man in charge of the operation" but any authority Hosig had must have been closely limited to the operation of the crane and the dependent activities of the crew. His negligence in not seeing the wire is clearly of the momentary, unanticipated type considered in the cases already referred to.[6]

The present record does not support any of the following propositions: (1) That Icke, on behalf of the company, laid out the work and directed the crane to be operated so that violation of the safety order was necessary or probable. (2) That Icke failed to use reasonably adequate methods and processes to make the employment safe. (3) That Icke failed reasonably to enforce compliance by the company's employees. Accordingly the present record does not support the award of increased compensation.

---

[4] *Wisconsin Bridge & Iron Co. v. Industrial Comm.*, *supra*, pages 270, 271, footnote 3.

[5] *Eau Claire Electric Co-op. v. Industrial Comm.*, *supra*, page 216, footnote 2.

[6] *L. G. Arnold, Inc., v. Industrial Comm.*, *supra*, footnote 3; *Wisconsin Bridge & Iron Co. v. Industrial Comm.*, *supra*, footnote 3.

Where an award is set aside, the court may remand the record to the commission for further hearing or proceedings.[7] We have noted the inadequacy of the present record in showing all the pertinent circumstances. If we were only concerned with the commission's interest as a litigant, it would seem appropriate to let it bear the burden of the inadequacy of the record it produced. In view, however, of the fact that the real parties in interest are the widow and small children of the deceased employee, and since they did not have the aid of counsel in bringing out the facts, and since the record is inadequate, we consider that justice requires the record to be remanded for further hearing.

*By the Court.*—Judgment setting aside the award of increased compensation is modified so as to remand the record to the commission for further hearing and further proceedings according to law. As so modified, the judgment is affirmed.