625 P.2d 1245

Serafin JARAMILLO, Plaintiff-Appellee,

v.

The ANACONDA COMPANY,
Self-Insured Employer,
Defendant-Appellant.

No. 4641.

Court of Appeals of New Mexico.

Feb. 24, 1981.

Louise Gibson, Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, for defendant-appellant.

Victor Roybal, Roybal & Crollett, Albuquerque, for plaintiff-appellee.

OPINION

WALTERS, Judge.

Defendant appeals the trial court's allowance of increased compensation benefits based on its finding that defendant failed to supply safety devices required by § 52–1–10, N.M.S.A.1978, of our Workmen's Compensation Act. Also challenged as excessive is the $3,750 attorneys fee awarded by the court. We reverse on both issues.

While walking on a travel-way at defendant's mine, plaintiff fell through a manhole because an insecure cover shifted when he stepped on it. The trial court granted an additional 10% in compensation payments to plaintiff for the injuries he suffered, finding that the unsecured cover was in violation of the Mining Safety Act regulation requiring "railings, barriers, or covers" for openings near travel-ways, as well as that defendant failed to supply an adequate and reasonable safety device for the protection of plaintiff which § 52–1–10 B, N.M.S.A. 1978, requires if safety devices are not prescribed by law. The latter finding was gratuitous since there is no dispute that safety devices for mines, as prescribed by Federal Regulation 57.11–12 and adopted by the State Mining Safety Advisory Board, and State Regulation 63–28–5 outlining specific safety devices, were in effect at the time of the accident. Regulation 63–28–5 requires openings to be protected by a sub-

stantial hatch or bars, or be planked over, or barred by a railing. Both regulations have the force and effect of law. Section 69–8–6 B, N.M.S.A.1978.

The trial court indicated that it interpreted § 52–1–10 B, *supra*, to mean that

* * * [P]roviding a safety device means more than * * * physically providing a cover for that manhole. * * * [I]f it is not in place, it is not a safety device. * * * [T]here were two employees down there. * * * And [when] they came up * * * they left that lid ajar. * * * [That] was a sufficient violation of the safety device requirement to find that defendant * * * failed to provide a safety device. And the employer will be required to pay an additional ten percent.

Findings and conclusions were entered accordingly.

The manhole cover or hatch was a safety device authorized by both pertinent safety regulations; thus there was no "failure to provide" on the part of the employer.

New Mexico has not yet addressed the question of an employer's duty to assure that safety devices provided are in place and operative at all times, a failure of which leads to liability for increased benefits to a workman injured thereby. We might feel differently about such a proposition if this were a case where evidence disclosed notice to the employer of missing or improperly operating safety equipment, but there is not even a suggestion of such facts here. It is clear that the hole was left uncovered by the negligence of fellow employees.

We believe the Tenth Circuit correctly decided a similar question when a skilled workman fell from a scaffold which did not have "an access ladder or equivalent safe access" attached to it at the time of the accident. The court ruled, in *Usery v. Kennecott Copper Corp.*, 577 F.2d 1113 (10th Cir. 1977), that merely because employees frequently did not use the ladders provided and made available to them by Kennecott, Kennecott could not be held liable for failing to "require use" of such safety equipment provided.

It was not the purpose of the Act to make an employer the insurer of his employees' safety. * * * The ultimate aim of the act was not to prevent all accidents, but to provide * * * employees with safe and healthful working conditions "so far as possible." Certainly the Act requires employers to be diligent in protecting the health and safety of its employees; however, it does not hold the employer responsible for the prevention of all accidents. * * *

The meaning usually attributed to the word provide is to furnish, supply or make available.

*Id.* at 1118–19.

Construing a statute similar to ours but which additionally imposed upon an employer the obligation "reasonably to enforce compliance by employees" with safety practices and devices, the Wisconsin Supreme Court, in *Icke Construction Co. v. Industrial Comm'n*, 30 Wis.2d 63, 139 N.W.2d 841, 843 (1966), said that "where an employee's injury was caused by momentary lack of compliance with a safety statute or order resulting from the unanticipated negligence of a fellow employee, that fact alone does not establish 'failure of the employer to comply' * * *."

Our statute requires only that the employer "provide" safety devices. To construe that requirement as obligating the employer to monitor all devices at all times, and to "watchdog" careless employees to overcome the type of fellow-employee negligence that occurred in this case, is to read more into the statute than it contains. *Hicks v. Artesia Alfalfa Growers' Ass'n*, 66 N.M. 165, 344 P.2d 475 (1959). The employer had installed a kind of safety device required by law; it thus complied with the statutory mandate "to provide" such a device. Section 52–1–10 B, *supra*.

Plaintiff was not entitled to the penalty increase in benefits. The evidence clearly discloses his injuries resulted from negligence of his co-employees, and perhaps himself, but not because the required hatch or cover had not been provided by his employer.

With regard to the amount of attorney's fees allowed, that matter is remanded to the attention of the trial judge for such modification as may be necessary to adjust any part of that fee as, in the trial court's judgment, was attributed to the amount of the erroneously increased and escalated benefits awarded. *See Johnsen v. Fryar*, No. 4477, 19 N.M.S.B.B. 1024 (Ct.App.1980).

The matter of escalated benefits has been conceded by both parties to be governed by *Casias v. The Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App.1980).

The case is reversed and remanded for modification of the judgment entered, in accordance with this opinion.

IT IS SO ORDERED.

WOOD, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge, dissenting.

I dissent.

The trial court found:

\*   \*   \*   \*   \*   \*

5. Plaintiff sustained injuries when he stepped on an unsecured accessway cover falling approximately forty feet.

6. Defendant had an affirmative duty to see the cover was secured properly and maintained for the protection of plaintiff.

7. The unsecured cover was in violation of Reg. 57.11–12, as adopted under the Mining Safety Act (69–8–12 through 69–8–15, N.M.S.A., 1978 Comp.) which requires "Openings above, below or near travelways through which men or materials may fall shall be protected by railings, barriers, or covers. \* \* \* "

8. Defendant was in violation of the above described regulation.

9. Defendant failed to provide an adequate and reasonable safety device for the protection of plaintiff in violation of Sec. 52–1–10, N.M.S.A., 1978 Comp.

10. Plaintiff is entitled to a ten percent increase of all past and future weekly compensation benefits as provided by law.

\*   \*   \*   \*   \*   \*

I agree with the trial court's decision. It is supported by substantial evidence and correctly states the law.

The failure of an employer to provide an adequate and reasonable safety device for the protection of a workman is a matter of first impression. This judgment should be affirmed, except as to escalating benefits.

Plaintiff was walking from the lunch room to the crusher, stepped on the edge of a cover of a manhole and fell 30 or 40 feet. The cover slipped out from under him when plaintiff went down the manhole, but the cover remained on top. Defendant reported in its First Report of Accident and its report to the State Mine Inspector that:

Employee was walking to his working place when he stepped on the concrete cover over the crusher [metal cover over the hole in the concrete] which was loose. *The cover slipped out from under him and he fell through.* [Emphasis added.]

A deputy mine inspector testified that:

If the cover was not secured there enough to keep somebody from falling through that would be a violation.

After the accident, the cover was securely tied. It had an overlap of about 3 or 4 inches and it snapped on. Plaintiff fell through a manhole that had not been secured with a safe cover.

Section 52–1–10(B) reads in pertinent part:

In case of injury \* \* \* of a workman results from the failure of an employer to provide safety devices required by law \* \* \* then the compensation \* \* \* shall be increased ten percent.

Regulation 57.1–12 provides that "Openings \* \* \* below and travelways \* \* \* shall be protected by \* \* \* covers. \* \* \* " It is unreasonable to say that the word "cover" means anything that lies over the manhole. A "cover" anticipates a workman stepping on it while walking. The "cover" must be of such strength, fitness for use, and securement that danger of falling is lessened or prevented. Serious injury or death will result if the "cover" is not fit for the pur-

pose for which it is used. If the "cover" does not serve its purpose, it is not a "safety device." It is a "cover" that causes injury or death. It is the antithesis of a "safety device."

"[T]he term 'safety device' as used in the Workmen's Compensation Act of this State means and includes all things which will lessen danger or secure safety." *Jones v. International Minerals & Chemical Corporation*, 53 N.M. 127, 133, 202 P.2d 1080 (1949). The term "safety device" must be given a broad interpretation so as to include any practical or reasonable method of lessening or preventing a specific danger to which a workman is exposed. There is a difference of opinion as to the extent of liberality to be given the meaning of "safety device." Presently, the "device" must be a tangible thing that can be provided. It does not extend to a rule or course of conduct of an employer calculated to promote safety or prevent accidents. *Montoya v. Kennecott Copper Corporation*, 61 N.M. 268, 299 P.2d 84 (1956).

"To provide safety devices," excluding those to be used by a workman, means that an employer shall make available to a workman all tangible things that will lessen danger or secure safety. The far-reaching policy and spirit of the Workmen's Compensation Act with respect to the safety of a workman is a consideration of great weight. When the employer is at fault, our duty is to protect the workman, not the employer. When the workman recovers below, our duty is to view the evidence most favorable to the workman, not the employer. We should not protect the employer by holding that the manhole cover was a "safety device" that had been removed by employees and left in a dangerous position which exposed plaintiff to danger. If the trial court had found for the defendant, we would then diagnose the facts and testimony most favorable to defendant in support of the trial court's decision.

When we speak in terms of a "device" that establishes "safety" when the device is available and in use, we mean a "device" that lessens or prevents the danger, not a "device" that increases the danger. If the "device" provided by an employer does not serve its purpose, it is not a "safety device." For example, a handrail or guard is a safety device that an employer must provide a workman who pushes a wheelbarrow loaded with a butane tank along a walkway on a platform or scaffold. The purpose of the guard is to lessen or prevent the danger to which the workman is exposed and avoid an accidental injury. The failure to provide the guard allows an injured workman to recover an additional 10%. *Romero v. H. A. Lott, Inc.*, 70 N.M. 40, 369 P.2d 777 (1962). If a guard had been provided, made out of flimsy or defective wood that failed to prevent the workman from falling, the guard would not be a "safety device" because it did not serve its purpose.

A metal or plastic helmet is a "safety device" provided by employers for the protection of workmen who labor near overhead swinging cables, hooks or machinery. *Mascarenas v. Kennedy*, 74 N.M. 665, 397 P.2d 312 (1964). If the helmet provided did not fit the workman and slipped off at the precise time of the danger, the helmet would not be a "safety device."

The same rule would apply to a safety belt, *Baca v. Gutierrez*, 77 N.M. 428, 423 P.2d 617 (1967), and rubber gloves, *Quintana v. East Las Vegas Municipal School Dist.*, 82 N.M. 462, 483 P.2d 936 (Ct.App. 1971).

This rule should apply to a manhole cover that is not snapped on and slips out when stepped upon by a workman.

The Workmen's Compensation Act is remedial legislation. Its language must be "liberally" construed to effect its purpose. This cannot be done if we give the words "safety device" a meaning less than "actual safety." Section 69–27–1, N.M.S.A.1978 reads in pertinent part:

Every mine employer * * * *shall furnish and use safety devices and safeguards, adopt and use methods and processes reasonably adequate to render such employment and place of employment safe and shall do every other thing reasonably necessary to protect the life,*

*health, safety and welfare of such employees.* [Emphasis added.]

This mandate does not allow an employer to provide an employee with a safety device that has a semblance of safety. The place of employment shall actually be made "safe." *Neeley v. Union Potash & Chemical Co.,* 47 N.M. 100, 109, 137 P.2d 312 (1943), said:

> * * * We hold that the statute requires the grounding of the machinery in question, as a "safety device required by law", and the failure to so ground was a violation thereof which invoked the penalty contended for.

The *Neeley* rule was adopted even though there was no statute, regulation or order that machinery on the surface of a mine had to be grounded to prevent the electrocution of a workman.

*Janney v. Fullroe,* 47 N.M. 423, 144 P.2d 145 (1944) involved a statute which required gears to be "appropriately guarded" to prevent injury to an attendant or other person. The distance of the gears above the floor was a sufficient protection against employees on the floor and the gears were appropriately guarded. But distance was not an appropriate guard. The court said:

> * * * In the present case it was the duty of the employer to protect the workman against the danger incident to contact with the revolving gears. His duty required him to perform his work in close proximity to them. *The employer knew or should have known that it was customary to grease the gears while they were in motion. He was not forbidden to do so.* The employer was charged with notice of the danger to the workman and it was therefore its duty to appropriately guard the gears. * * * [Emphasis added.] [Id. 428, 144 P.2d 145.]

The duty to guard the gears while in motion is the equivalent of a duty to guard a manhole with a secured cover when walked on.

*Thwaits v. Kennecott Copper Corporation, Chino Mines Division,* 52 N.M. 107, 192 P.2d 553 (1948) interpreted the word "platforms," in the same statute as that of

"gears" in *Janney,* to mean "the rear platform of a caboose attached to an ore train, which was not equipped with reasonable safety devices."

See also, *Apodaca v. Allison & Haney,* 57 N.M. 315, 258 P.2d 711 (1953).

*Icke Construction Co. v. Industrial Commission,* 30 Wis.2d 63, 139 N.W.2d 841 (1966) and *Usery v. Kennecott Copper Corp.,* 577 F.2d 1113 (10th Cir. 1977) do not approach the problems in the instant case. A recitation is unnecessary.

*L. M. Bickett Co. v. Industrial Commission,* 10 Wis.2d 289, 102 N.W.2d 748 (1960) involved a workman engaged in the operation of a two-roller rubber-mixing mill. The workman was working from the rear of the machine. His left hand got caught in the hole in a rubber slot and was pulled into the rolls. There was a trip bar which when pulled down stopped the machine. This trip bar extended the full width of the front of the machine but not at the back of the machine. Following the injury a trip bar was installed at the rear of the machine. The regulations provided that rolls when revolving "shall be guarded or equipped with a device to prevent injury." If impractical, "a positive quick stopping device shall be provided."

The employer introduced testimony that inspectors and a safety engineer did direct the installation of "a more adequate quick-stopping device at the rear of the mill." In affirming the Commission the Supreme Court said:

> * * * However, the commission had before it the fact *that a safety bar had been installed after the injury across the rear of the machine, and that was evidence that could be considered by the commission.* [Citation omitted.] [Emphasis added.] [Id., 102 N.W.2d 750.]

In the instant case, the trial court had before it the fact that a secured manhole cover had been installed after the injury and that was evidence the trial court could consider.

In *State v. Industrial Commission*, 176 Ohio St. 199, 198 N.E.2d 666 (1964), a painter fell from a scaffold when the rope by which the scaffold was held against the side of the building broke. A regulation provided:

"Whenever practicable, the platform of swinging scaffolds shall be so lashed or secured while in use that they cannot sway from the structure."

In affirming an additional award, the court said:

The employer has no discretion as to determining the necessity of such securance; the rule is specific in that it requires the securance if practicable.
* * * The word, "practicable," has a definite meaning. It means capable of being put into practice or accomplished. * * *
* * * *If it is reasonably possible to secure the scaffolding, it must be done.* [Emphasis added.] [Id. 667.]

See also, *State ex rel. Geauga Indus. v. Industrial Com'n*, 60 Ohio St.2d 109, 14 Ohio Op.3d 341, 397 N.E.2d 1202 (1979); *State ex rel. Humble v. Mark Concepts, Inc.*, 60 Ohio St.2d 77, 397 N.E.2d 403 (1979).

In the instant case, the employer had a duty to provide a secured manhole cover as a safety device. It has no discretion in the matter. It must be done.

*Milwaukee Forge v. Dept. of I. L. H. R.*, 66 Wis.2d 428, 225 N.W.2d 476 (1975) held that an employer violated the safe place statute by failing to provide the employee, the operator of a trim press, with tongs long enough to remove forgings from the press without reaching through the press with his hands. The forgings were handled with tongs approximately 26 or 27 inches long. The court said:

" * * * [the employee's] attempt to push the forging ahead is a normal response to the employer's failure to furnish *adequate tools* to do the work. Appellant's failure to provide tongs of sufficient length to push the forgings off the deck was a substantial factor in bringing about Stephan's injury. *Had longer tongs been provided, Stephan's hand would not have been under the press.*

* * * " [Emphasis added.] [Id. 225 N.W.2d 480.]

In the instant case, if defendant had not provided plaintiff with a manhole cover that would slip out from under him, but supplied a manhole cover that was secured and snapped on, plaintiff would not have fallen through the manhole.

Any reasonable interpretation of "cover" and "safety device" shows that the "cover" was not a "safety device." The court found that "Defendant failed to provide an adequate and reasonable safety device for the protection of plaintiff." I agree.

The court also awarded attorney fees in accordance with law.

The judgment should be affirmed except as to escalating benefits.