[Civ. No. 30083. Fourth Dist., Div. Three. Sept. 21, 1983.]

ROGER L. LAIRD, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
IMPERIAL VISTA CORPORATION et al., Respondents.

COUNSEL

James Banks for Petitioner.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett, Strantz, Sobelsohn & Elkin and James M. Bass for Respondents.

OPINION

CROSBY, J.—Roger Laird seeks annulment of a decision of the Workers' Compensation Appeals Board (WCAB) denying his petition for reconsideration on appeal from an order of the rehabilitation bureau (Bureau) which terminated his rehabilitation benefits without a hearing. We conclude petitioner would have been entitled to retain the benefits pending a hearing had he filed a proper and timely appeal with the workers' compensation judge.

I

On February 4, 1980, petitioner, then a 49-year-old equipment mechanic, sustained an industrial injury to his neck and spine. He commenced a re-

habilitation program in August 1980, and on March 20, 1981, settled all the aspects of his workers' compensation claim by compromise and release, except vocational rehabilitation benefits pursuant to Labor Code section 139.5.[1] On October 15, 1981, the Bureau issued a notice of intent to terminate those benefits unless petitioner filed a "substantiated objection" within 20 days. Counsel's timely response stated petitioner had been unable to find work and requested a formal conference to discuss the matter. The Bureau filed a termination order on November 5, 1981, which stated no substantiated objection had been received. Counsel directed a second letter to the Bureau on November 13, 1981, requesting a conference and rescission of the termination order, but received no response. A "Declaration of Readiness to Proceed" was filed with the workers' compensation judge July 29, 1982, but petitioner's claim was denied September 30, 1982, as untimely and deficient for failure to specify issues. The WCAB adopted the conclusions of the workers' compensation judge and denied reconsideration.

Petitioner contends administrative director's regulation, section 10007,[2] as promulgated and applied, violates article I, sections 7 and 15 of the California Constitution and the Fourteenth Amendment to the United States Constitution by not providing a pretermination hearing. We agree, unless the Bureau continues benefits pending decision on appeal after hearing before a workers' compensation judge.

## II

Vocational rehabilitation benefits, which include temporary disability payments, additional living expenses and vocational training, constitute a portion of the benefits provided by employers to their employees as compensation for job related injuries. (§ 3207.) The original version of section 139.5 made employer participation in the employee's rehabilitation wholly voluntary and limited the employer's financial responsibility. (See *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 627 [170 Cal.Rptr. 32, 620 P.2d 618].) Participating employees became subject to postrehabilitation reevaluation for permanent disability entitlements. (See *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 234 [110 Cal.Rptr. 144, 514 P.2d 1224]; *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 50 [152 Cal.Rptr. 153].)

In 1974 the Legislature amended section 139.5 to impose on employers a mandatory duty to provide rehabilitation benefits to employees who choose

---

[1]Unless otherwise indicated, all statutory references are to the Labor Code.

[2]The regulations adopted by the administrative director are published in title 8 of the California Administrative Code.

them (§ 139.5 and Cal. Admin. Code, tit. 8, § 10001 et seq.) and to vest in injured workers a statutory entitlement to those benefits. (*Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at p. 628.) The amendment and the regulations implementing section 139.5 ". . . demonstrate the profound significance that legislators and administrators have attached to the need to make employers responsible for speedy initiation of rehabilitation programs." (*Id.,* at p. 629.) The policy of this state is "to encourage the fullest possible participation in rehabilitation training by injured workers in order to enable them to return to the work force as soon as practicable." (*LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 242 [139 Cal.Rptr. 547, 666 P.2d 989].)

## III

When state action threatens to deprive a qualified person of benefits to which he is statutorily entitled, procedural due process considerations loom large. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 260-262 [25 L.Ed.2d 287, 294, 296, 90 S.Ct. 1011]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774].) A timely and meaningful opportunity to be heard is a fundamental aspect of due process. (*Armstrong* v. *Manzo* (1965) 380 U.S. 545, 552 [14 L.Ed.2d 62, 66-67, 85 S.Ct. 1187].)

Petitioner contends pretermination hearings at the Bureau level are essential to protect the injured worker and promote the legislative objective of returning him to the mainstream of productive society as quickly as possible. Respondents argue a hearing on appeal before a workers' compensation judge before the decision to terminate becomes final on appeal is all that is required. They contend the Bureau was not conceived to be an adjudicatory body, observing that petitioner could have triggered a hearing on the merits before a workers' compensation judge by filing a notice of appeal within 20 days of the Bureau's action. Instead, petitioner waited seven months to file an untimely "Declaration of Readiness to Proceed."

It is not essential that necessities of life be at stake to constitutionally mandate a pretermination hearing. (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 88-89 [32 L.Ed.2d 556, 574, 92 S.Ct. 1983]; *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586].) The test is whether "full relief [can] be obtained at a postdeprivation hearing." (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 331 [47 L.Ed.2d 18, 31, 96 S.Ct. 893].) Several competing factors must be considered: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of those interests through the procedures used, and the probable value, if any, of additional and substitute procedural safeguards; (3) the govern-

ment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest of the individual. (*Id.,* at p. 335 [47 L.Ed.2d at p. 33]; *People* v. *Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622].)

The employee who is unable to work at his former occupation due to a work related injury ordinarily has a distinct and compelling need for the vocational training benefits mandated by section 139.5. While this economic benefit, like social security disability benefits, is not based on financial necessity alone, it cannot be said the need for them does not usually exist. (See *Mathews* v. *Eldridge, supra,* 424 U.S. at p. 340 [47 L.Ed.2d at p. 36].) And the notion "injured workers would prefer to collect disability insurance [rather than] be rehabilitated and eventually return to work . . . does a disservice to the working man and woman in California." (*LeBoeuf* v. *Workers' Comp. Appeals Bd., supra,* 34 Cal.3d at p. 245, fn. 11.) An erroneous interruption of rehabilitation benefits could seriously jeopardize the retention of partially acquired skills and would certainly postpone the employee's return to the work force for an indeterminate period. Consequently, the employee's interests are compelling.

The risk of erroneous deprivation is more than minimal. Termination decisions are routinely based solely upon the case file and medical reports. Although the employee may offer "substantiated objections" in writing, that protection is minimal under the circumstances. Petitioner, for example, had but 20 days notice to contact counsel, discover facts, conduct tests, prepare documents and locate affiants to counter the threatened termination. In our view the risk of erroneous deprivation is unacceptably high in light of the statutory goals.

The burden on the Bureau to provide a hearing appears to be slight when weighed against the potential impact on the injured worker. Respondent's claim that the Bureau is not an appropriate adjudicatory setting is simply fallacious. The administrative director's regulations provide for a hearing on the original entitlement: "After allowing the parties an opportunity to be heard and to present information supporting their respective positions, the Bureau shall issue its findings and serve copies on the parties." The provision applicable to terminations inexplicably fails to provide a similar protection: "Upon the request of either the employee or employer, or upon its own authority, the Bureau may modify, suspend or terminate a vocational rehabilitation plan." (Cal. Admin. Code, tit. 8, § 10007, subd. (c).) In *McCullough* v. *Terzian* (1970) 2 Cal.3d 647 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266], the governmental interest issue was resolved in favor of the benefit recipient in language we believe appropriate to proposed ter-

minations of rehabilitation benefits: ". . . while it is true some increased costs are involved to a state in providing pretermination hearings and any benefits paid to ineligible recipients pending decision probably cannot be recouped, the state may reduce these financial burdens by developing procedures for prompt pretermination hearings and by skillful use of personnel and facilities. Thus, the interest of the eligible recipient and the state in assuring uninterrupted assistance outweighs the state's competing concern to prevent any increase in its fiscal and administrative burdens." (*Id.*, at p. 654.)

Finally, an employee whose rehabilitation benefits are terminated by internal administrative action without the opportunity to personally appear and explain his rehabilitation efforts and needs surely loses at least a modicum of dignity.

For the foregoing reasons we conclude rehabilitation benefits may only be terminated prospectively pending determination of the injured worker's appeal where a pretermination hearing analogous to that of section 10007, subdivision (a), of the administrative director's regulations (Cal. Admin. Code, tit. 8, § 10007, subd. (a)) is not provided by the Bureau.

### IV

█ Nevertheless, we are forced to conclude petitioner is not entitled to relief since he did not notice an appeal and hence failed to exhaust his administrative remedies. █ The exhaustion requirement is jurisdictional in California. (*Abelleira* v. *Dist. Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715]; *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105, 111, 113 [122 Cal.Rptr. 282].) █ Although exceptions exist, none is applicable here. For example, some varieties of constitutional challenges can avoid the requirement in whole or in part. A constitutional challenge coupled with a strong public interest, usually found in cases concerning attempts to impose restraints on fundamental First Amendment rights, may be brought without submitting to the challenged procedure. (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219]; *Ebel* v. *City of Garden Grove* (1981) 120 Cal.App.3d 399 [176 Cal.Rptr. 312].) Also, a litigant who must exhaust need not present his constitutional claim before the administrative agency whose existence or regulations he seeks to challenge. After pursuing the available administrative procedure, he may present the constitutional claim for the first time in the courts. (*California* v. *Superior Court* (*Veta*) (1974) 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281].) These constitutional exceptions are inapplicable here, however.

Also, where the administrative remedy would obviously be ineffective because the agency's decision is certain to be adverse, exhaustion is not required. (*Chrysler Corp.* v. *New Motor Vehicle Bd.* (1979) 89 Cal.App.3d 1034 [153 Cal.Rptr. 135]; *Ogo Associates* v. *Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].) Petitioner has not attempted to make a showing of that sort and doubtless could not. (See *Frisco Land & Mining Co.* v. *State of California* (1977) 74 Cal.App.3d 736, 757 [141 Cal.Rptr. 820].)

 By failing to file a timely notice of appeal petitioner deprived the workers' compensation judge and the WCAB of the opportunity to entertain his objections to the termination of the rehabilitation benefits on the merits. In *San Diego Transit Corp.* v. *Workers' Comp. Appeals Bd.* (*Renfro*) (1980) 28 Cal.3d 635 [170 Cal.Rptr. 40, 620 P.2d 626], the Supreme Court held rehabilitation benefits must commence when the injured worker initiates his claim, not when the Bureau finally acts on the claim. The rule cannot be harsher for the worker who has once demonstrated entitlement in a contested hearing. In short, had petitioner perfected his appeal, the benefits could not have been lawfully terminated before the decision after hearing by the workers' compensation judge (since the Bureau declined his request for a pretermination hearing); and he would have been entitled to relief in this court had that occurred. As it stands, petitioner is no different from any other rightfully disappointed litigant whose cause is barred for failure to file a notice of appeal.[3]

The order must be affirmed.

Trotter, P. J., and Wallin, J., concurred.

---

[3]This does not mean petitioner (who found new employment Feb. 22, 1982) has no remedy. The appeals board may relax its rules and conclude part III of this opinion constitutes good cause sufficient to entitle petitioner to have his case reopened should he petition to do so. (See § 5803 and *LeBoeuf* v. *Workers' Comp. Appeals Bd., supra,* 34 Cal.3d at p. 244.)