779 P.2d 129

**Elaine MONTEZ, Claimant–Appellant,**

v.

**J & B RADIATOR, INC., and Mountain States Mutual Casualty Company, Respondents–Appellees.**

**No. 10774.**

Court of Appeals of New Mexico.

July 20, 1989.

Certiorari Denied Sept. 5, 1989.

Chris Lackmann, Albuquerque, for claimant-appellant.

Janet M. Velazquez, Bradley & McCulloch, P.A., Albuquerque, for respondents-appellees.

## OPINION

BIVINS, Chief Judge.

Claimant Elaine Montez appeals a Disposition Order of the Workers' Compensation Division awarding her 5% permanent partial disability. She raises two issues involving the interim Workmen's Compensation Act, NMSA 1978, §§ 52-1-1 to 52-1-68 (Orig. Pamp. & Cum. Supp.1986) (Interim

Act). She claims (1) that Section 52-1-25 (Cum. Supp.1986), as it existed between May 21, 1986, and June 19, 1987,[1] violates claimant's right to equal protection and is therefore unconstitutional; and (2) that Sections 52-1-25 and 52-1-42 (Cum. Supp. 1986), as they existed between those same dates, do not limit permanent partial disability to the American Medical Association's (AMA) guidelines for permanent impairment. As to the first issue, we hold that Section 52-1-25 does not raise equal protection issues because the Interim Act did not create separate classes of workers. As to the second issue, we hold that the language of Section 52-1-25 evinces the legislature's intent that partial disability be determined according to the AMA guidelines. Nothing in that section purports to give the hearing officer discretion to determine the percentage of disability differently. Therefore, we affirm.

There is no dispute as to the following findings made by the hearing officer: claimant was injured on February 10, 1987, when the Interim Act was in effect; the accidental injury occurred in the course and scope of claimant's employment with J & B Radiator, Inc.; claimant injured her back and underwent surgery; claimant reached maximum medical improvement by February 11, 1988, and was released at that time to return to the type of work she was performing when the accident occurred.

In his amendment to findings of fact and conclusions of law, the hearing officer found:

Finding No. 23 is hereby amended to read as follows: "For the period beginning February 11, 1988, Claimant was permanently partially disabled to the extent of five (5%) percent, based solely on Dr. Mora's assessment of a five (5%) percent physical impairment and the operation of Section 52-1-42 N.M.S.A.1978 (1986 Supp.), as it was in effect on February 11, 1987. Claimant has reached maximum medical improvement."

1. Claimant erroneously asserts the Interim Act was in effect until June 19, 1987. The Act was actually in effect until July 1, 1987. The error in dates does not, however, have any effect on the issues in this appeal.

### 1. *The Constitutional Claim*

Claimant argues that Section 52–1–25 of the Interim Act violates equal protection. Generally, to preserve a question for review it must appear that a ruling or decision below was fairly invoked. *See* SCRA 1986, 12–216(A); *Simmons v. McDaniel*, 101 N.M. 260, 680 P.2d 977 (1984). This same rule has been applied to a ruling or decision by an administrative agency. *See Board of Educ. of Taos Mun. Schools v. Singleton*, 103 N.M. 722, 712 P.2d 1384 (Ct.App.1985); *see generally* 4 K. Davis, *Administrative Law Treatise* § 26:7 (2d ed.1983).

Claimant states in her docketing statement that this "issue arose at the formal hearing, [sic] below." In her brief-in-chief claimant represents that the "Hearing Officer rejected Claimant's argument * * * that § 52–1–25 * * * was violative of Claimant's constitutional right to equal protection."

We have reviewed the tape reference for these statements, and find only a brief passing reference to an equal protection claim during closing argument. The hearing officer did not reject the claim; he was never requested to do so. Moreover, the constitutional issue was not included in the prehearing order as a contested issue.

█ Nonetheless, claimant's failure to sufficiently raise this issue below is not fatal. An administrative agency does not have the authority to determine the constitutionality of a statutory enactment. *Laird v. Workers' Compensation Appeals Bd.*, 147 Cal.App.3d 198, 195 Cal.Rptr. 44 (1983); *Duncan v. Missouri Bd. for Architects, Professional Eng'rs & Land Surveyors*, 744 S.W.2d 524 (Mo.App.1988). *See also Sandia Sav. & Loan Ass'n v. Kleinheim*, 74 N.M. 95, 391 P.2d 324 (1964); *Prisk v. City of Poulsbo*, 46 Wash.App. 793, 732 P.2d 1013 (1987); 4 K. Davis, *supra*, § 26:6. Claimant's challenge to the statute is a claim that the statute is unconstitutional on its face. Raising such an issue before the hearing officer was not required in order to preserve it because he had no authority to decide the issue. Thus, we believe the purpose of the rule requiring preservation is not served by applying it here, and we address the merits of the claim. *See Duncan v. Missouri Bd. for Architects, Professional Eng'rs & Land Surveyors.*

Claimant argues that Section 52–1–25 of the Interim Act creates a separate class of workers who receive less disability benefits than workers covered by the former Act or the current Act. Section 52–1–25 of the Interim Act provides:

"[P]artial disability" means a permanent physical impairment to a workman resulting from an accidental injury arising out of and in the course of employment, whereby a workman has any anatomic or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides to the evaluation of permanent impairment * * * *

The Workmen's Compensation Act, as it existed prior to the Interim Act, defined "partial disability" as

a condition whereby a workman, by reason of injury arising out of and in the course of his employment, is unable to some percentage-extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage-extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience.

§ 52–1–25 (Orig. Pamp.).

The current Workers' Compensation Act defines "partial disability" similarly to the original Act. *See* NMSA 1978, § 52–1–26 (Repl. Pamp.1987).

Claimant argues that the former Act and the current Act provide that partial disability benefits are determined by the inability to perform work, while benefits under the Interim Act are determined by the AMA guidelines on percentage of impairment. She claims the latter results in lower benefits to an injured worker. Thus, claimant argues that the Interim Act creates two

classes of workers—(1) those injured before May 21, 1986 or after June 19, 1987, and (2) those injured between May 21, 1986 and June 19, 1987 (the effective dates of the Interim Act). She asserts these classifications violate equal protection, and do not survive either rational basis or heightened scrutiny.

■ We need not decide which standard should apply, nor whether the Interim Act can survive scrutiny, because we hold that it does not create two separate classifications subject to different treatment. *Cf. Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 763 P.2d 1153 (1988) (holding NMSA 1978, Section 41–11–1 (Repl. Pamp.1986) tacitly made three separate classifications). All workers injured during the effective period of the Interim Act were subject to the same statutory provisions on partial disability. The fact that workers injured under a previous codification of the law might be treated differently does not raise an equal protection claim. To hold that the legislature unconstitutionally violates equal protection when a change in a statutory scheme creates groups of people subject to different treatment would mean that the legislature could never change the laws.

A legislature may replace one statutory scheme with another, without creating an unconstitutional distinction between those who are affected by the prospective application of the statute and those who are not. *See Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505, 31 S.Ct. 490, 491, 55 L.Ed. 561 (1911) (the equal protection component of the fourteenth amendment "does not forbid ... statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time"); *Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (citing *Sperry* in fifth amendment equal protection context); *Alyeska Pipeline Serv. v. Anderson*, 669 P.2d 956 (Alaska 1983) (statute prospectively raising interest rates for judgments did not violate equal protection; citing *Sperry*). We recognize that a legislative classification based wholly on a time element, when the time selected has no reasonable relation to the object of legislation, denies equal protection. *See State v. Sunset Ditch Co.*, 48 N.M. 17, 145 P.2d 219 (1944) (statutory scheme which created different requirements for corporations organized before statehood violated equal protection; classification based on time of organization alone is unreasonable and arbitrary).

The dispositive issue is whether the statutory scheme can be said to create classifications, which then must be evaluated in light of the legislative purpose. *See Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) (holding that New Mexico's property exemption for Vietnam veterans created a fixed, permanent distinction between two classes of bona fide residents based on whether they were residents prior to a specified date); *see also Richardson v. Carnegie Library Restaurant, Inc.* In this case, we are not persuaded that claimant has identified two classes within the statute she challenges. Thus, we believe the general rule, that a legislature may modify the law and provide for prospective application, controls.

We hold, therefore, that the Interim Act provision on "partial disability" does not raise an equal protection claim. Claimant's constitutional argument is without merit.

2. *AMA Guidelines*

Claimant asserts the hearing officer erred in basing the determination of partial disability on the AMA guidelines for permanent impairment. The applicable sections are as follows:

*52–1–42. Compensation benefits; partial disability; maximum duration of benefits. (Effective December 1, 1986.)*

*For partial disability, the workmen's compensation benefits not specifically provided for in Section 52–1–43 NMSA 1978 shall be a percentage of the benefit payable for total disability as provided in Section 52–1–41 NMSA 1978. The percentage shall be determined by the hearing officer pursuant to the provisions of Section 52–1–25 NMSA 1978. The duration of partial disability bene-*

*fits shall in no event be longer than six hundred weeks.* [Italics in original.]

52–1–25. Partial disability. (Effective until July 1, 1987.)

As used in the Workmen's Compensation Act [Chapter 52, Article 1 NMSA 1978], "partial disability" means a permanent physical impairment to a workman resulting from an accidental injury arising out of and in the course of employment, whereby a workman has any anatomic or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides to the evaluation of permanent impairment, copyrighted 1984, 1977 or 1971, or comparable publications by the American medical association.

Claimant argues that Section 52–1–25 only provides a "threshold" of factors that must be reached before a finding of partial disability can be made. She contends that once the requirements of Section 52–1–25 are met, the hearing officer may then make a discretionary determination of the percentage disability. According to claimant, when Sections 52–1–25 and 52–1–42 are read together, the latter grants the hearing officer discretion. She refers to slightly different wording in Section 52–1–43 to bolster her argument.

In *Security Escrow Corp. v. State Taxation & Revenue Department,* 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988), we said:

> In construing the meaning of a particular statute, a reviewing court's central concern is to determine and give effect to the intention of the legislature. *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 749 P.2d 1111 (1988). In determining this intent, we look primarily to the language of the act and the meaning of the words, and when they are free from ambiguity, we will not resort to any other means of interpretation. *See State v. Pitts,* 103 N.M. 778, 714 P.2d 582 (1986); *New Mexico Beverage Co. v. Blything,* 102 N.M. 533, 697 P.2d 952 (1985).

We believe the meaning of Section 52–1–25 is clear. The legislature intended that partial disability be determined in accordance with the AMA guidelines for permanent impairment. This is what the hearing officer did, and we will not disturb his finding.

Affirmed.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.