# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date: November 6, 2014**

**NO. 34,128**

**SARA BENAVIDES,**

Worker-Petitioner,

v.

**EASTERN NEW MEXICO MEDICAL CENTER and ZURICH AMERICAN INSURANCE COMPANY,**

Employer/Insurer-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Gregory D. Griego Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Petitioner

Hale & Dixon, P.C.
Timothy S. Hale
Albuquerque, NM

for Respondents

**OPINION**

**MAES, Justice.**

{1}     When a worker's injury "results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the worker," the Workers' Compensation Act (the Act) provides that a worker's benefits shall be increased by 10%. NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013). In this case we determine whether a "wet floor" sign is a safety device and whether a nurse who slips on a recently mopped floor at work is entitled to a 10% increase in benefits when a "wet floor" sign was not posted near the mopped floor. We hold that a "wet floor" sign is a safety device and that the nurse's injury resulted from the negligence of the employer in failing to supply reasonable safety devices in general use. In addition, we hold that Section 52-5-1 of the Act does not violate the doctrine of separation of powers.

**I.      FACTS AND PROCEDURAL HISTORY**

{2}     Sara L. Benavides (Worker), a registered nurse working for Eastern New Mexico Medical Center (Employer), slipped and fell on a wet floor in the Medical Center and sustained compensable injuries in 2006. Worker seriously injured her right leg, right hip, lower back, and neck. Soon after, Worker began receiving temporary

total disability benefits of $585.89 per week, the maximum rate for a 2006 injury. Worker has continued to receive benefits at this rate.

{3}    In 2011, Employer filed a complaint seeking a determination of permanent partial disability benefits and maximum medical improvement. Worker filed an amended answer and counterclaim requesting, among other things, a 10% increase in benefits due to a failure to supply a safety device pursuant to Section 52-1-10(B). Worker claimed that "wet floor" signs are a safety device and because they were not posted in or around the patient's room where she fell, she was entitled to the 10% safety device penalty. Employer denied the safety device allegation and demanded strict proof which resulted in a full evidentiary hearing before the Workers' Compensation Judge (WCJ).

{4}    At the hearing, only three witnesses testified: Worker; William Fladd, Employer's Director of Environmental Services; and Rose Blount, another registered nurse who worked for Employer. Mr. Fladd testified that it has been his practice to supply each housekeeping cart with two to four "wet floor" signs. He said that it is Employer's policy and procedure to place a "wet floor" sign near the entrance of the room being mopped before mopping and to remove the "wet floor" sign after the floor has dried. Mr. Fladd stated that the purpose of a "wet floor" sign is "to notify people

2

of a potentially dangerous situation." At trial, Mr. Fladd stated that he had disciplined employees in the past who failed to post "wet floor" signs.

{5}     Ms. Blount testified that on the same day that Worker suffered her injury, she also slipped but did not fall on a wet floor when she was attending to a patient, and that no "wet floor" signs were posted in or around the room. Ms. Blount warned her patient not to get out of bed after the patient informed her that "housekeeping just mopped the floor." Ms. Blount stated that she walked up and down the hall looking for a housekeeper, but she could not find one, nor did she see a housekeeping cart or a "wet floor" sign. Ms. Blount then asked the unit secretary to call housekeeping to request a "wet floor" sign while she watched the door to make sure that nobody was injured.

{6}     Worker testified that as she entered a patient's room to administer medication, she took about three steps and "just slipped," landing on her pubic bone and twisting her whole torso. Worker described the pain as feeling as if somebody had sliced the back of her calf with a knife and that her whole foot was throbbing. Worker remained on the floor for at least five minutes until she crawled to the sink to gather paper towels to place over the floor because she "noticed it was very wet" and she "didn't want anybody else to fall." As Worker left the room, she noticed that there was not

a "wet floor" sign outside of the patient's room and she did not see any other "wet floor" signs in the hall. Worker witnessed Ms. Blount at the nurse's station requesting that somebody post "wet floor" signs. Soon after, "wet floor" signs were posted.

{7} The WCJ entered a compensation order finding that "wet floor" signs were safety devices, and that Employer did supply "wet floor" signs but that they were not deployed as they should have been. Nevertheless, the WCJ concluded in his compensation order that "Employer provided all safety devices which were appropriate, as required by statute, or in general use," and that increased benefits under Section 52-1-10(B) were inappropriate.

{8} Worker timely appealed. The Court of Appeals affirmed, holding that *Jaramillo v. Anaconda Co.*, 1981-NMCA-030, 95 N.M. 728, 625 P.2d 1245, is controlling in this case. *Benavides v. Eastern N.M. Med. Ctr.*, No. 32,450, mem. op. ¶ 4 (N.M. Ct. App. Mar. 25, 2013) (non-precedential). In *Jaramillo*, the Court of Appeals held that the "failure to provide" language in Section 52-1-10(B) did not apply to a situation where a safety device is provided by an employer but is not properly employed by a fellow employee. *Jaramillo*, 1981-NMCA-030, ¶ 8. Because this was "precisely what happened here," the Court of Appeals denied the 10% increase in benefits. *Benavides*, No. 32,450, mem. op. ¶ 3.

{9}     Worker appealed the following issue to this Court: "Whether an injured worker is entitled to an increase in benefits pursuant to [Section] 52-1-10(B) if an employer fails to provide a safety device at a potentially dangerous or hazardous work site." We granted certiorari.

## II.     STANDARD OF REVIEW

{10}     "We review factual findings of Workers' Compensation Administration judges under a whole record standard of review". *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. "Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision, and we neither reweigh the evidence nor replace the fact finder's conclusions with our own." *Id.* (internal citation omitted). We will uphold the Board's decision if we "find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 6, 111 N.M. 550, 807 P.2d 734 (internal quotation marks and citation omitted). "[A]lthough the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Id.*

{11} "In reviewing a WCJ's interpretation of statutory requirements, we apply a de novo standard of review". *Dewitt*, 2009-NMSC-032, ¶ 14.

> "We look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole."After we determine the meaning of the statutes, we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence."

*Id.* (citation omitted).

## III.    DISCUSSION

{12}    Section 52-1-10(B) provides:

> In case an injury to, or death of, a worker results from the failure of an employer to provide safety devices required by law or, in any industry in which safety devices are not prescribed by statute, if an injury to, or death of, a worker results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the worker, then the compensation otherwise payable under the Worker's Compensation Act shall be increased ten percent.

Worker and Employer both argue that the statutory language is unambiguous as to the requirement to provide safety devices. The parties differ, however, as to whether a "wet floor" sign is a safety device and what is required by the language "supply reasonable safety devices."

**A.    A "wet floor" sign is a safety device**

{13} Worker argues that a "wet floor" sign is a safety device because its purpose is to warn of a potential danger or hazard. Employer answers that signs promote safety, which is different from an actual safety device, such as a machine guard.

{14} What is a reasonable safety device is a factual question. *Martinez v. Zia Co.*, 1983-NMCA-063, ¶ 15, 100 N.M. 8, 664 P.2d 1021. A safety device is something which "'will lessen danger or secure safety,' as something tangible, concrete, that can be seen, touched or felt—an 'instrumentality'—as opposed to a rule or course of conduct." *Montoya v. Kennecott Copper Corp.*, 1956-NMSC-062, ¶¶ 13-14, 61 N.M. 268, 299 P.2d 84. "[W]hat is or is not a safety device depends on the purpose involved." *Martinez*, 1983-NMCA-063, ¶ 15. "The term 'safety device' must be given a broad interpretation so as to include any practical or reasonable method of lessening or preventing a specific danger to which a workman is exposed." *Jaramillo*, 1981-NMCA-030, ¶ 23.

{15} Examples of tangible safety devices that lessen a specific danger include the following: goggles used to protect workers' eyes from flying particles, *Pino v. Ozark Smelting & Mining Co.*, 1930-NMSC-057, ¶¶ 5, 14, 35 N.M. 87, 290 P. 409; guard rails on a platform to protect workers from falling, *Thwaits v. Kennecott Copper Corp., Chino Mines Div.*, 1948-NMSC-019, ¶¶ 13, 18, 52 N.M. 107, 192 P.2d 553;

7

a gas indicator to give notice of the presence of deadly gases, *Apodaca v. Allison & Haney*, 1953-NMSC-048, ¶¶ 12, 21, 57 N.M. 315, 258 P.2d 711; cable clamps to prevent a drill cable from falling into a water well and entangling a worker, *Flippo v. Martin*, 1948-NMSC-060, ¶¶ 2, 3, 7, 52 N.M. 402, 200 P.2d 366; a rear view mirror on a tractor that allowed the operator to see behind him or her, *Martinez*, 1983-NMCA-063, ¶¶ 12, 16; a manhole cover to protect workers from falling into an open manhole, *Jaramillo*, 1981-NMCA-030, ¶ 4.

{16}    "However, not all things which promote safety can be considered as safety devices, and even those things which might be safety devices for one purpose may not be so for another purpose." *Hicks v. Artesia Alfalfa Growers' Ass'n*, 1959-NMSC-076, ¶ 9, 66 N.M. 165, 344 P.2d 475. In *Hicks*, an employee was injured when unloading sections of a prefabricated steel building from a railroad car. *Id.* ¶¶ 3-4. The injury occurred because all of the heavy gauge steel wires holding the sections in place were cut at the same time instead of separately for each section. *Id. Hicks* held that the method of removing the wires during unloading "would not ordinarily be considered as having any relationship to safety devices to be used for unloading." *Id.* ¶ 9. Besides courses of conduct, ordinary hand tools, such as a wrench, are not

safety devices. *Rowland v. Reynolds Elec. Eng'g Co.*, 1951-NMSC-046, ¶¶ 8-9, 55 N.M. 287, 232 P.2d 689.

{17} From our reading of the statute as a whole and our interpretation of New Mexico case law, we conclude that a safety device is something specific and tangible that prevents a specific danger; courses of conduct, rules, or ordinary hand tools are not safety devices. Accordingly, we find that a "wet floor" sign is "something tangible, concrete, that can be seen, touched or felt," *Montoya*, 1956-NMSC-062, ¶ 14, not a rule or course of conduct like the unloading of a railroad car. *See Hicks*, 1959-NMSC-076, ¶ 3.

{18} A "wet floor" sign warns of the specific danger of a slippery floor, just as eye goggles protect a worker from the specific danger of flying particles and a gas indicator warns workers of the specific danger of harmful gasses. *See Pino*, 1930-NMSC-057, ¶¶ 5, 14; *Apodaca*, 1953-NMSC-048, ¶¶ 12, 21. Mr. Fladd testified that the purpose of a "wet floor" sign is to "notify people of a potentially dangerous situation." Ms. Blount recognized the specific danger of a wet floor when she warned her patient not to get out of bed because of the danger of slipping and falling. Worker overcame her injuries to clean up the wet floor with paper towels to reduce the specific risk of a wet floor. We also interpret the term safety device broadly in order

9

to protect employees from specific dangers to which they are exposed. *Jaramillo*, 1981-NMCA-030, ¶ 23. Accordingly, we conclude that a "wet floor" sign is a safety device because it is a tangible device that lessens a specific danger and helps to keep workers safe.

{19} Section 52-1-10(B) also requires that the safety device be in "general use." "General use" means "prevalent, usual, extensive though not universal, wide spread." *Martinez*, 1983-NMCA-063, ¶ 17 (internal quotation marks and citation omitted). General use "is a matter of fact and not of opinion" and "proof of the fact may be established either by testimony of specific uses, or by evidence of general practice of contractors." *Romero v. H. A. Lott, Inc.*, 1962-NMSC-037, ¶ 12, 70 N.M. 40, 369 P.2d 777 (citations omitted).

{20} Mr. Fladd testified that it was Employer's usual practice and policy to display "wet floor" signs before mopping and to remove them once the floor has dried. Mr. Fladd also stated that he reprimanded his employees for failing to use "wet floor" signs. Based on Mr. Fladd's testimony of specific and general uses of "wet floor" signs, we hold that "wet floor" signs were in general use and that a "wet floor" sign is a safety device in general use under Section 52-1-10(B).

**B.     Worker is entitled to a 10% increase in benefits because Employer failed to supply a "wet floor" sign**

10

{21} The safety device statute "was passed to compel employers to supply reasonable safety devices in general use for the protection of the workmen where safety devices are not specified by law. Only by observing it may employers avoid liability under it for compensable injuries to their employees." *Apodaca*, 1953-NMSC-048, ¶ 11. The penalty statute "is a recognition of and an attempt to correct the disproportion which might exist between the misconduct and the penalty. . . . The result is an incentive to both parties to observe safe practices". *Baca v. Gutierrez*, 1967-NMSC-021, ¶ 11, 77 N.M. 428, 423 P.2d 617. We have not found any ordinance or statute that requires "wet floor" signs, nor do the parties cite to any such law; thus the key question is whether Employer negligently failed to "supply" a "wet floor" sign. *Cf. Jones v. Int'l Minerals & Chem. Corp.*, 1949-NMSC-015, ¶¶ 8, 12, 53 N.M. 127, 202 P.2d 1080 (explaining that an improved electrical switch was required by the Mine Safety Act).

{22} Worker contends that it "defies logic and reason" to conclude that Employer supplied a "wet floor" sign when it was not posted near or around the wet floor. The fact that Employer had "wet floor" signs on nearby carts, Worker asserts, is not sufficient to prove that Employer supplied "wet floor" signs. Worker also argues that the Court of Appeals' decision is contrary to NMSA 1978, Section 52-1-8 (1989),

11

titled "Defenses to action by employee." Because part of the "no fault" system of the Act, several common law defenses previously available to employers were abolished, including negligence of "a fellow servant," Worker contends that housekeeping staff were "fellow servants," therefore the WCJ erred by attributing negligence to the staff instead of Employer.

{23} Employer counters that Section 52-1-10(B) is unambiguous in its requirement that an employer only supply safety devices; the language does not make the employer the "insurer of his employees' safety." Employer cites to *Jaramillo* in support of its argument that reading the statute to obligate employers to monitor all devices at all times, or to "watchdog" careless employees, is to read more into the statute than it contains.

{24} The first guide to statutory interpretation is the actual wording of the statute. *Dewitt*, 2009-NMSC-032, ¶ 29. However, this Court has advised that a literal interpretation of the Act is not always appropriate because "the provisions of the [Act] are imprecise. . . . This serves as a warning that the plain language rule may not be the best approach to interpreting this statute." *Chavez v. Mountain States Constructors*, 1996-NMSC-070, ¶ 25, 122 N.M. 579, 929 P.2d 971. When the statutory language is ambiguous "we can consider principles of statutory construction

12

that are employed with statutes that are unclear. In doing so, we must attempt to construe a statute according to its obvious spirit or reason." *Dewitt*, 2009-NMSC-032, ¶ 29 (internal quotation marks and citation omitted). Additionally, "we strive to read related statutes in harmony so as to give effect to all provisions." *N.M. Indus. Energy Consumers v. PRC*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105.

{25}    "Supply" is defined as, "[t]o furnish or provide (a person) *with* something." XVII The Oxford English Dictionary 256 (2d ed. 1989) (alteration in original). We do not read anything in the definition of "supply" nor glean anything from its common understanding that specifies whether furnishing or providing a person with a safety device means requiring the use of the safety device. Thus, we turn to precedent and other tools of statutory construction.

{26}    In *Usery v. Kennecott Copper Corp.*, the Tenth Circuit held that "provide" does not mean "require use." 577 F.2d 1113, 1118-1119 (10th Cir. 1977). According to *Usery*, this result is mandated by the plain meaning of the word "provide," which must be used in interpreting the Occupational Safety and Health Act, which does not require the prevention of "all accidents, but to provide American employees with safe and healthful working conditions 'so far as possible.'" *Id.* at 1118. We find the *Usery* interpretation too formalistic and in contradiction of the requirement that the plain

13

language rule does not end our inquiry. *See also* NMSA 1978, § 50-9-21(A) (1993) ("Nothing in the Occupational Health and Safety Act shall be construed or held to supersede or in any manner affect the Workers' Compensation Act.").

{27} Instead, we must also construe the statute "according to its obvious spirit or reason." *Dewitt*, 2009-NMSC-032, ¶ 29. (internal quotation marks and citation omitted). "The legislature enacted [this section] as a penalty system, placing the duty on the employer to furnish adequate safety devices in general use . . . , and in the event of his failure to do so, making him liable to be found guilty of negligence and subject to the penalty provided." *Baca*, 1967-NMSC-021, ¶ 13.

> The legislative history of the [Occupational Safety and Health] Act is clear that "final responsibility for compliance with the requirements of this Act remains with the employer." It is difficult to conceive of any rationale that, in the face of employee head, eye, hand, and other injuries, permits an employer to escape responsibility and compliance duties under the [Occupational Safety and Health] Act by simply pointing to shelves filled with unused hardhats, goggles, gloves, and other protective equipment.

Mark A. Rothstein, *Occupational Safety and Health Law*, § 5:7 (2013 ed.).

{28} In this case, the Court of Appeals held that *Jaramillo* is controlling. In *Jaramillo* a mine worker fell through a manhole when an insecure cover shifted as he stepped on it. 1981-NMCA-030, ¶ 2. The safety device in question in *Jaramillo* was a manhole cover, provided by the employer at the work site but "left uncovered by the

14

negligence of fellow employees." *Id.* ¶¶ 4-5. We hold that *Jaramillo* is not controlling in this case because a "wet floor" sign was not near the site of the accident. Moreover, the negligence of the fellow employee in this case was the complete failure to deploy a "wet floor" sign after mopping, not merely deploying the sign incorrectly.

{29}     This case is more analogous to *Martinez*, 1983-NMCA-063, and *State, ex rel. Weich Roofing, Inc. v. Industrial Comm'n of Ohio*, 590 N.E.2d 781 (Ohio Ct. App. 1990). In *Martinez*, an equipment operator was injured while operating a Bobcat tractor that was not equipped with a rear view mirror. 1983-NMCA-063, ¶¶ 11-12. The employer had other Bobcats equipped with rear view mirrors. *Id.* ¶ 12. The Court of Appeals found that a rear view mirror was a safety device, that the employer failed to provide a rear view mirror, and affirmed the district court's award of an increase of benefits pursuant to Section 52-1-10(B). *Martinez*, 1983-NMCA-063, ¶¶ 16, 20, 26. The facts are similar here. Employer provided "wet floor" signs but one was not used at the accident site.

{30}     In *Weich Roofing*, a roofing employee ascended to the roof using a ladder equipped with safety feet in accordance with an applicable safety regulation. 590 N.E.2d at 782-83. While the employee was on the roof, a co-worker removed the ladder and substituted a wooden ladder without safety feet in its place. *Id.* at 783. The

15

wooden ladder was the upper portion of an extension ladder. *Id.* The lower portion of the extension ladder had safety feet, but the upper portion did not. *Id.* When the employee descended from the roof, the wooden ladder slid out from under him causing injury. *Id.* The employer in *Weich Roofing* had specifically instructed employees to place safety shoes on the upper portion of an extension ladder when it was used separately and had made feet available on the crew's equipment truck. *Id.*

{31} On appeal, the employer argued that safety feet were made available in the equipment truck and were therefore provided. *Id.* The employer also argued that the "co-employee's negligent removal of and failure to use available safety equipment in violation of company policy" relieved it of liability. *Id.* The Ohio court rejected employer's arguments, stating:

> Relator thus contends that the specific safety regulations require an employer to make required safety equipment available, not to ensure its proper use by employees. Nevertheless, this is not the law of Ohio. Specific safety requirements are enacted to protect the lives, health, or safety of employees. The employer, not the employee, has the obligation to comply with specific safety requirements. Although an employee or third-party may be assigned by the employer to ensure compliance with a specific safety requirement, the ultimate responsibility for failure to comply with such a requirement remains with the employer . . . . As this court recently observed, specific safety regulations are intended to protect employees from their own negligence, folly, or stupidity, in addition to providing them with a safe working environment.

*Id.* (internal quotation marks and citations omitted).

16

{32} *Weich Roofing* is slightly different from this case because safety feet for ladders were specifically required by the Ohio Administrative Code. There is no such requirement for "wet floor" signs in New Mexico. Nonetheless, we find the rationale compelling and in line with the purpose and spirit of the Act that employers must create a safe work environment for their employees.

{33} Having determined that a "wet floor" sign is an essential safety device at a work site where nurses are expected to promptly attend to the needs of numerous patients to provide critical care, we conclude that safety devices cannot effectuate their purposes if they are kept in utility closets or in storage. They must be "supplied" and "used" to prevent accidents. The mere fact that Employer had written policies and procedures in place and that "wet floor" signs were provided to custodians does not satisfy the spirit and purpose of the Act. Section 52-1-10(B) places the final responsibility and duty on the employer to furnish adequate safety devices for its workers. *See Baca*, 1967-NMSC-021, ¶ 13.

{34} Worker was not warned of a dangerous situation when she entered the patient's room because there was not a "wet floor" sign posted near the room nor did she see any posted down the hallway. Further, the testimony from Mr. Fladd and Ms. Blount establish that this was not the only time that "wet floor" signs were not placed near

17

a wet floor. Mr. Fladd testified that he had disciplined numerous of his employees for failing to post "wet floor" signs before Worker's accident. Ms. Blount testified that she also nearly fell on a slippery floor the same day as Worker and that no "wet floor" signs were posted. Worker and Ms. Blount had to take safety precautions into their own hands when Worker dried the wet floor with paper towels and Ms. Blount requested that "wet floor" signs be posted and stood watch to ensure that nobody else was injured on the slippery floor.

{35}    We also agree with Worker's contention that Section 52-1-8 prohibits shifting the blame for providing safety devices to the custodial staff. Section 52-1-8(B) states that it shall not be a defense "that the injury or death was caused, in whole or in part, by the want of ordinary care of a fellow servant." This language affirms that Section 52-1-10(B) imposes a responsibility on the employer to create a safe work environment by ensuring that safety devices are supplied and properly employed.

{36}    The rights of workers and the rights of employers must be subject to the same standards. *See* Section 52-5-1; *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶1, 131 N.M. 272, 34 P.3d 1148. Section 52-1-10(A) provides that a worker's benefits shall be decreased by ten percent if an injury results from the worker's "failure to use a safety device provided by [the] employer." When Subsection (A) and

(B) are read together, if a worker's failure to "use" a safety device results in a 10% decrease in benefits, then an employer's failure to "supply" a safety device should likewise result in a 10% increase in benefits.

{37}     We hold that Employer failed to supply a safety device and that Worker is entitled to a 10% increase under Section 52-1-10(B). We are not unmindful that under the Act an employer is not to be held strictly liable for all violations. We do not hold here that Employer must provide constant over-the-shoulder supervision for each of its employees, but we do hold that in order to fulfill its statutory obligation, Employer must do more than issue written policies and procedures to its employees or conduct "department training" shortly after hiring them.

**C.     Section 52-5-1 does not violate the doctrine of separation of powers**

{38}     Worker asserts that interpretation of the laws is a power vested solely in the judiciary and that Section 52-5-1 is contrary to established case law that the Act should be interpreted under the rule of liberal construction. *See Mascarenas v. Kennedy*, 1964-NMSC-179, ¶ 4, 74 N.M. 665, 397 P.2d 312 ("We are firmly committed to the doctrine that the Workmen's Compensation Act is remedial legislation and must be liberally construed to effect its purpose."); *Avila v. Pleasuretime Soda, Inc.*, 1977-NMCA-079, ¶ 10, 90 N.M. 707, 568 P.2d 233 ("It

19

requires no citation of authority that the Workmen's Compensation Act must be liberally construed to accomplish beneficent purposes for which it was enacted, and that all reasonable doubts must be resolved in favor of employees."). Section 52-5-1, titled "Purpose," reads in relevant part:

> It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' benefits legislation shall not apply in these cases. . . . Accordingly, the legislature declares that the Workers' Compensation Act . . . [is] not remedial in any sense and [is] not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand.

{39} Employer answers that this issue was not preserved because it was raised for the first time in this appeal. In the alternative, Employer's only argument is that when the statutory language is clear and unambiguous, it must be given effect.

{40} "To preserve a question for review it must appear that a ruling or decision" below was fairly invoked. Rule 12-216(A) NMRA. In *Montez v. J & B Radiator, Inc.*, the Court of Appeals held that claimant's failure to raise a constitutional attack on the statute before the Workers' Compensation Division did not preclude appellate review, inasmuch as the Division had no authority to decide the issue. 1989-NMCA-060, ¶ 7, 108 N.M. 752, 779 P.2d 129. *Montez* further stated that "[r]aising such an issue

20

before the hearing officer was not required in order to preserve it because he had no authority to decide the issue." *Id.*

{41}   The situation is similar here. Worker did not raise her constitutional argument in front of the WCJ.  However, in her docketing statement to the Court of Appeals Worker did raise the question of "[w]hether the WCJ erred in his interpretation of § 52-1-10(B)." The Court of Appeals issued its Memorandum Opinion dismissing her appeal before any briefs were submitted. We hold that Worker's issue was preserved.

{42}   Worker's argument was previously advanced in *Garcia v. Mt. Taylor Millwork, Inc.*, 1989-NMCA-100, 111 N.M. 17, 801 P.2d 87. The Court of Appeals concluded that Section 52-5-1 was not an attempt to undermine the jurisprudence developed by the appellate courts. *Garcia*, 1989-NMCA-100, ¶ 9. Instead, the Court found Section 52-5-1 to be "a prospectively applicable statement of legislative intent that neither attempts nor purports to retroactively dismantle established workers' compensation case law enunciated under the rule of liberal construction." *Garcia*, 1989-NMCA-100, ¶ 9.

{43}   "We have repeatedly held that every presumption is to be indulged in favor of the validity and regularity of legislative enactments. A statute will not be declared unconstitutional unless the court is satisfied beyond all reasonable doubt that the

21

legislature went outside the constitution in enacting the challenged legislation." *McGeehan v. Bunch*, 1975-NMSC-055, ¶ 7, 88 N.M. 308, 540 P.2d 238 (internal quotation marks and citations omitted). Where "a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which will uphold its constitutionality." *Huey v. Lente*, 1973-NMSC-098, ¶ 6, 85 N.M. 597, 514 P.2d 1093. "The constitutional doctrine of separation of powers allows some overlap in the exercise of governmental function[s]." *Mowrer v. Rusk*, 1980-NMSC-113, ¶ 25, 95 N.M. 48, 618 P.2d 886.

{44}     By virtue of Worker's argument that Section 52-5-1 violates the doctrine of separation of powers and the holding in *Garcia* that it is only a statement of legislative intent, it is evident that Section 52-5-1 is susceptible to two constructions. We are not convinced "beyond all reasonable doubt" that the legislature overstepped its bounds in enacting Section 52-5-1. We agree with the Court of Appeals in *Garcia* that the legislature did not intend the courts to disregard precedent by applying liberal construction. *Garcia*, 1989-NMCA-100, ¶9. We also agree with the Court of Appeals that liberal construction can still be applied by this Court as it is but one of many tools employed in construing legislation. *Id.* ¶ 11. We hold that Section 52-5-1 does not violate the doctrine of separation of powers.

## IV.  CONCLUSION

{45}  Section 52-1-10(B) imposes a duty on employers to ensure that they maintain a safe work environment by providing necessary safety devices. Employer cannot be said to have supplied "wet floor" signs just because they were made available to custodians. Employer must ensure that such safety devices are properly employed to avoid accidents such as Worker's. Therefore, Worker is entitled to a 10% increase in benefits. We also hold that Section 52-5-1 is constitutional.

{46}  **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

23

_____

**CHARLES W. DANIELS, Justice**